UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FRIENDS OF THE DELAWARE RIVER LLC, | ) **Civil No.: 2:26-cv-3620** |
| | ) |
| | ) |
| Plaintiff, | ) **COMPLAINT FOR DECLARATORY AND** |
| vs. | ) **INJUNCTIVE RELIEF AND CIVIL** |
| | ) **PENALTIES** |
| ACCURATE RECYCLING CORPORATION, | ) |
| and ACCURATE METALS LLC, | ) |
| | ) **JURY TRIAL DEMAND** |
| Defendants. | ) |
| | ) |
| | ) |

Plaintiff, Friends of The Delaware River LLC ("Plaintiff"), by and through its counsel, alleges as follows:

1.  This is a citizen suit, brought pursuant to the Section 505(a)(1) of the Federal Water Pollution Control Act (the "Clean Water Act" or "CWA"), 33 U.S.C. § 1365(a)(1), to address violations of the CWA by Defendants Accurate Recycling Corporation ("Accurate Recycling") and Accurate Metals LLC ("Accurate Metals," and together with "Accurate Recycling," "Accurate" or the "Defendants") arising out of operations at Defendants' facilities located on a contiguous property at 508 East Baltimore Avenue, Lansdowne, PA 19050 and 26 5th Street, Lansdowne, PA 19050 (together the "Facility").

2.  Since at least September 30, 2020, Defendants have been discharging and continue to discharge polluted stormwater from the Facility without a permit in violation of the express terms and conditions of Sections 301 and 402 of the Clean Water Act, 33 U.S.C. §§ 1311, 1342, in violation of Pennsylvania's Clean Streams Law (the "CSL"), and in violation of the PAG-03 National Pollutant Discharge Elimination System ("NPDES") General Permit for Discharges of

PLAINTIFF'S COMPLAINT

Stormwater Associated with Industrial Activity (the "General Permit") issued by the Commonwealth of Pennsylvania.

3.      Plaintiff seeks declaratory judgment, injunctive relief, the imposition of civil penalties, and the award of costs, including attorneys' and expert witness fees, for Defendants repeated and ongoing violations of the CWA.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over the parties and subject matter of this action pursuant to Section 505(a)(1) of the CWA, 33 U.S.C. § 1365(a)(1), 28 U.S.C. § 1331 (an action arising under the laws of the United States), and 28 U.S.C. § 2201 (declaratory relief).

5.      On October 30, 2025 (508 East Baltimore Avenue, Lansdowne, PA 19050), and on March 6, 2026 (26 5th Street, Lansdowne, PA 19050), as required by the CWA, 33 U.S.C. § 1365(b)(1)(A), Plaintiff provided notice of intent to file suit against Defendants for CWA violations ("Notice Letters") to the Administrator of the United States Environmental Protection Agency ("EPA"); the Regional Administrator of EPA Region III; the Regional Administrator of the Pennsylvania Department of Environmental Protection ("DEP") Southeast Region; the Administrator of the DEP (collectively, "State and Federal Agencies"); and Defendants.

6.      The Notice Letters provided Defendants with sufficient information to determine (i) the CWA requirements Plaintiff alleges Defendants violated, (ii) the activity alleged to constitute the violation(s), (iii) sufficient information to determine the date, location, and person responsible for the violation(s), and (iv) the contact information for the Plaintiff and Plaintiff's Counsel.  A copy of the Notice Letters is attached as Exhibit 1.

7.      More than sixty (60) days have passed since the Notice Letters were served on Defendants and the State and Federal Agencies.  During this time, neither the EPA, nor the Commonwealth of Pennsylvania, has commenced or is diligently prosecuting a court action to

redress the violations alleged herein.  No claim in this action is barred by any prior administrative action pursuant to Section 309(g) of the CWA, 33 U.S.C. § 1319(g).

8.     Venue is proper in the Eastern District of Pennsylvania pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the source of the violations is located within this judicial district.

## **PARTIES**

9.     Plaintiff is an organization established to protect the watersheds located within the Southeast Region of the Commonwealth of Pennsylvania. Plaintiff and its members are concerned with the environmental health of Cobbs Creek, Darby Creek, and the Delaware River, and its members use and enjoy the waters of Cobbs Creek, Darby Creek, and the Delaware River, their inflows, outflows, and other areas of the overall Delaware River Watershed, into which the stormwater discharges from the Facility flow.  Plaintiff's members use and enjoyment of these waters is negatively affected by the pollution caused by Defendants' operations.  Plaintiff and its members are dedicated to protecting the water quality of Cobbs Creek, Darby Creek, and the Delaware River, their inflows, outflows, and other areas of the overall Delaware River Watershed, for the benefit of its ecosystems and communities.  To further these goals, Plaintiff actively seeks federal and state agency implementation of the CWA, and, where necessary, directly initiates enforcement actions on behalf of itself and for its members and community.

10.     Plaintiff's members, like other citizens, taxpayers, property owners, and residents of its community, lives, works, travels near, and recreates in close proximity to the confluence of Cobbs Creek, Darby Creek, and the Delaware River, their inflows, outflows, and other areas of the overall Delaware River Watershed, of which Cobbs Creek, Darby Creek, and the Delaware River are a part, into which Defendants discharge pollutants.  Plaintiff's members, like other citizens, taxpayers, property owners, and residents, use and enjoy Cobbs Creek, Darby Creek, and the

Delaware River, their inflows, outflows, and other areas of the overall Delaware River Watershed, of which Cobbs Creek, Darby Creek, and the Delaware River are a part, for recreational, educational, scientific, conservation, aesthetic, spiritual, and other purposes. Defendants' discharge of stormwater containing pollutants impairs each of these uses. Thus, Plaintiff's members' interests have been, are being, and will continue to be adversely affected by Defendants' failure to comply with the CWA and the General Permit.

11.    Plaintiff's members enjoy relaxing in and around and traversing through the areas adjacent to the affected waters.

12.    Plaintiff's members have witnessed the polluted nature of Cobbs Creek, Darby Creek, and the Delaware River. Plaintiff's members have observed that Cobbs Creek, Darby Creek, and the Delaware River appear both brown and dirty. In addition to its visual observation of the water, Plaintiff's members have also noticed an unpleasant smell coming from the waters. For example, the President of FOTDR, is an avid jet skier. He, together with other FOTDR members, regularly traverse the Delaware River in and around Little Tinicum Island and other portions of the Delaware River near the Facility.

13.    Plaintiff is aware that Defendants' Facility is upstream and that the pollution from the Facility flows downstream via direct flow into the Lansdowne Borough MS4 sewer system, which ultimately empties into Cobbs Creek, Darby Creek and the Delaware River. Plaintiff believes that this has degraded the beauty of the adjacent waters and curtailed its members' enjoyment of the adjacent area.

14.    Plaintiff's members believe that reducing Defendants' pollution of Cobbs Creek, Darby Creek, and the Delaware River will improve the water quality in Cobbs Creek, Darby Creek, and the Delaware River, and allow its members the opportunity to better enjoy the recreational and aesthetic interests in Cobbs Creek, Darby Creek, and the Delaware River.

15.     Defendant Accurate Recycling Corporation is a Pennsylvania Corporation with its listed principal place of business 508 E Baltimore Avenue, Lansdowne, PA 19050.

16.     Defendant Accurate Metals LLC is a Pennsylvania Corporation with its listed principal place of business 508 E Baltimore Avenue, Lansdowne, PA 19050 and its registered office located at 26 5th Street, Lansdowne, PA 19050.

17.     Upon information and belief, as well as information derived from the Pennsylvania Department of State, as well as Accurate's website (https://accuraterecycling.com/) Defendants are related entities.

18.     Defendants own and operate the Facility.

19.     Upon information and belief, as well as information derived from Defendants' website, accuraterecycling.com, Accurate Recycling and Accurate Metals operate their business on a contiguous property as a commercial and industrial recycling, waste, and scrap metal facility.



PLAINTIFF'S COMPLAINT

20.     Defendants' website states, "Accurate Recycling Corporation and Accurate Metals team up to deliver a large portfolio of recycling services: Cardboard & Paper Recycling; Single Stream & Comingled Recycling; Recycling Equipment; Office Waste Recycling; Finished Goods Recycled; Scrap Metal; High & Low Grade Materials; Obsolete Inventory Recycling; and Roll Stock."[1]

21.     The Facility operates as, amongst other things, a commercial and industrial recycling, waste, and scrap metal facility. Other activities likely carried out in the regular course of business at the Facility include commercial and industrial recycling and waste, storage of fuel and other oils, maintenance, equipment storage, and waste storage. Repair and maintenance activities carried out at the Facility include, but are not limited to, electrical, plumbing, roofing, asphalt, concrete, and utilities repairs as well as janitorial duties.

22.     The Facility's industrial activities fall under Standard Industrial Classification ("SIC") Code 5093 relating to scrap and waste recycling, placing the Facility in Appendix § P, requiring Defendants to obtain coverage under the General Permit.  *See*, General Permit, Fact Sheet, PAG-03 Appendix § P, p. 4.

23.     Despite the General Permit's requirement that "commercial and industrial recycling, waste, and scrap metal Facilities" obtain coverage under the General Permit for any stormwater discharges, Accurate has failed, and continues to fail, to obtain such coverage, in violation of the General Permit and the CWA.

---

[1] *See* Defendants' website at https://www.accuraterecycling.com.

PLAINTIFF'S COMPLAINT

## REGULATORY BACKGROUND

### *The Problem of Stormwater Pollution*

24.    Stormwater runoff is one of the most significant sources of water pollution in the nation and has been recognized as a leading cause of significant and cumulative harmful impacts to the water quality of Cobbs Creek, Darby Creek, and the Delaware River, their tributaries, and the overall Delaware River Watershed, of which Cobbs Creek, Darby Creek, and the Delaware River are a part.  With every rainfall event, significant amounts of polluted rainwater flow from local industrial facilities, such as the Facility, and pour into storm drains, local tributaries, and into Cobbs Creek, Darby Creek, and the Delaware River, their tributaries, and the overall Delaware River Watershed, of which Cobbs Creek, Darby Creek, and the Delaware River are a part.

25.    Stormwater runoff from industrial sites such as the Facility causes harm to humans and aquatic life.  In particular, stormwater can contain heavy metal pollutants such as aluminum, iron, and zinc, as well as high concentrations of suspended solids, Total Phosphorous, pH, Oil & Grease ("O & G"), and nitrate plus nitrite nitrogen.  Exposure and ingestion of heavy metals can cause health problems in people and aquatic animals, including neurological, physiological, and reproductive effects.  Heavy metals have been shown to alter activity in tissues and blood of fish.

26.    High concentrations of total suspended solids ("TSS") degrade optical water quality by reducing water clarity and decreasing light available to support photosynthesis. TSS has been shown to alter predator/prey relationships (for example, turbid water might make it difficult for fish to see their prey).  Deposited solids alter habitat for fish, aquatic plants, and benthic organisms. TSS can also be harmful to aquatic life because numerous pollutants, including metals and polycyclic aromatic hydrocarbons ("PAHs"), are absorbed onto TSS.  Thus, higher concentrations of TSS mean higher concentrations of toxins associated with those sediments.  Inorganic sediments, including settleable matter and suspended solids, have been shown to negatively impact

PLAINTIFF'S COMPLAINT

species richness, diversity, and total biomass of filter feeding aquatic organisms on bottom surfaces.

**The Clean Water Act**

27.     The CWA prohibits the discharge of any pollutant into waters of the United States unless the discharge complies with various enumerated CWA requirements. Section 301(a), 33 U.S.C. § 1311(a) Among other things, CWA Section 301(a) prohibits discharges not authorized by, or in violation of, the terms of a National Pollutant Discharge Elimination System ("NPDES") permit issued pursuant to CWA Section 402, 33 U.S.C. § 1342.

28.     The CWA requires that NPDES permits be issued for stormwater discharges "associated with industrial activity" to a point source.  CWA Section 402(p), 33 U.S.C. § 1342(p).

29.     The "discharge of a pollutant" is defined as "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12).

30.     The CWA, Section 301(b), required that, by March 31, 1989, all point source dischargers, including those discharging polluted stormwater must achieve technology based effluent limitations by utilizing the Best Available Technology Economically Achievable ("BAT") for toxic and nonconventional pollutants and the Best Conventional Pollutant Control Technology ("BCT") for conventional pollutants.  *See* 33 U.S.C. § 1311(b); 40 C.F.R. § 125.3(a)(2)(ii)-(iii).

31.     The Third Circuit has held that "a discharge that is not in compliance with a permit is archetypal Clean Water Act violation, and subjects the discharger to strict liability."  *United States v. Pozsgai*, 999 F.2d 719, 725 (3d Cir. 1993); see *also United States v. Allegheny Ludlum Corp.*, 366 F.3d 164, 175 (3d Cir. 2004); *Natural Resources Defense Council, Inc. v. Loewengart & Co.*, 776 F. Supp. 996, 998 (M.D. Pa. 1991); *Public Interest Research Group v. Powell Duffryn Terminals Inc.*, 913 F.2d at 68, 73 n. 10 (3d Cir. 1990) ("the Clean Water Act imposes strict liability.  All the plaintiff need do is establish that the defendant violated the terms of it NPDES

permit"); *Am. Canoe Assoc., Inc. v. Murphy Farms Inc.,* 412 F.3d 536, 539-40 (4th Cir. 2005) (declining to "graft an exemption onto the jurisdictional requirements of section 505(a) to shield from suit those past violators who have undertaken good-faith remedial efforts at the time of the complaint: and noting that "it is plainly possible for those undertaking good-faith remediation … nevertheless 'to be in violation' of the Act within the meaning of section 505(a), because the CWA creates a regime of strict liability for violations of its standards").

32.     Pursuant to this strict liability regime, neither the CWA nor its implementing regulations contain an exception for "de minimis" violations.  *See*, *Alabama Power Co. v. Costle*, 636 F.2d 323, 360 (D.C. Cir. 1979); *Hawaii's Thousand Friends v. City & Cty of Honolulu*, 821 F. Supp. 1368, 1392 (D. Haw. 1993) (noting that the CWA does not excuse de minimis violations).

33.     CWA Section 505(a)(1) provides for citizen enforcement actions against any "person," including individuals, corporations, or partnerships, for violations of NPDES permit requirements and for unpermitted discharges of pollutants.  33 U.S.C. § 1365(a)(1), see 33 U.S.C. § 1362(5).

34.     CWA Section 505(a) authorizes a citizen suit action for injunctive relief.  33U.S.C. § 1365(a).

35.     CWA violators are subject to an assessment of civil penalties of up to $64,618.00 per day per violation for violations occurring after November 2, 2015.  33 U.S.C. § 1319(d), 40 C.F.R. §§ 19.1-19.4.

***State Regulations***

36.     CWA Section 402(b), 33 U.S.C. § 1342(b), allows each state to administer its own EPA approved permit program for discharges.  Pennsylvania was delegated the authority to administer the NPDES program in 1978.

37.     In Pennsylvania, the DEP, through the Bureau of Clean Water ("BCW"), has

approval from the EPA to administer an NPDES permit program for the Commonwealth.   The

BCW issues general NPDES permits regulating water pollutant discharges from various categories

of dischargers.

38.     Pennsylvania law defines "pollution" as:

contamination of any waters of the Commonwealth such as will create or is likely to create a nuisance or to render such waters harmful, detrimental or injurious to public health, safety or welfare, or to domestic, municipal, commercial, industrial, agricultural, recreational, or other legitimate beneficial uses, or to livestock, wild animals, birds, fish or other aquatic life, including but not limited to such contamination by alteration of the physical, chemical or biological properties of such waters, or change in temperature, taste, color or odor thereof, or the discharge of any liquid, gaseous, radioactive, solid or other substances into such waters. The department shall determine when a discharge constitutes pollution, as herein defined, and shall establish standards whereby and wherefrom it can be ascertained and determined whether any such discharge does or does not constitute pollution as herein defined.

See 35 P.S. § 601.1.

39.     Pennsylvania law prohibits any person from placing or causing to be placed any

industrial wastes or other wastes, in a location where they cause pollution of any waters of the state

without a valid, unexpired permit. See 35 P.S. § 691.301; 35 P.S. § 691.611; 33 U.S.C. § 1311(a);

see also 25 Pa. Code Chapters 92a, and 96.

40.     Additionally, 25 Pa. Code § 92a.1(b) and 33 U.S.C. § 1342, prohibits any person

from discharging any pollutant or causing, permitting, or allowing a discharge of any pollutant

from a point source without applying for and obtaining a general or individual NPDES permit. See

25 Pa. Code § 92a.1(b); 33 U.S.C. § 1342.

41.     Section 303 of the CWA, 33 U.S.C. § 1313, requires states to adopt Water Quality

Standards ("WQS"), including water quality objectives and beneficial uses for navigable waters

of the United States.   The CWA prohibits discharges from causing or contributing to a violation

of such state WQS.   See 33 U.S.C. § 1311(b)(1)(c); 40 C.F.R. §§ 122.4(a), (d); 40 C.F.R. §

122.44(d)(1).

42.    Pennsylvania regulates water quality by way of a Water Quality Control Plan, which identifies WQS for water bodies within its geographic area. *See* 25 Pa. Code 93.6.

43.    Specifically, WQS applicable to Defendants are set forth in Section 93.6 of the Pennsylvania Code. Section 93.6(a) of the Pennsylvania Code states: "Water may not contain substances attributable to point or nonpoint source discharges in concentration or amounts sufficient to be inimical or harmful to the water uses to be protected or to human, animal, plant or aquatic life." *See* 25 Pa. Code 93.6(a).

44.    In addition, Section 93.6(b) of the Pennsylvania Code states: "specific substances to be controlled include, but are not limited to, floating materials, oil, grease, scum and substances that produce color, tastes, odors, turbidity or settle to form deposits." *Id*. at 93.6(b).

45.    Because the list of specific water quality criteria "does not include all possible substances that could cause pollution . . . [f]or substances not listed, the general criterion that these substances may not be inimical or injurious to the existing or designated water uses applies." *Id*. at 93.7(c).

***The General Permit***

46.    Section 402 of the CWA establishes the NPDES program, which allows EPA and states acting under delegated authority to issue NPDES permits for the discharge of pollutants from a point source. 33 U.S.C. § 1342. Any person who discharges a pollutant must apply for an NPDES permit unless they are exempt under the statute or the EPA regulations implementing it. *See* 40 C.F.R. § 122.21(a).

47.    The General Permit is an NPDES permit issued pursuant to CWA Section 402(p), 33 U.S.C. § 1342(p).  Violations of the General Permit are also violations of the CWA.  *See* General Permit, Part B, § I(A).

48.     The General Permit's Discharge Prohibitions prohibit stormwater discharges that cause or threaten to cause pollution, contamination, or nuisance.  *See* General Permit, Part A, §§ I(B), I(C).

49.     On or about March 24, 2023, the DEP adopted an updated NPDES General Permit for Discharges of Stormwater Associated with Industrial Activity.  The changes made in the updated General Permit were adopted to be consistent with the United States EPA's Multi-Sector General Permit for Stormwater Discharges Associated with Industrial Activity (the "MSGP") that was reissued and updated in 2015.  As of approximately March 24, 2023, the General Permit has superseded and rescinded the Previous PAG-03 General Permit except for purposes of enforcement actions brought pursuant to the prior permit.

50.     The General Permit is intended to provide NPDES permit coverage for discharges of stormwater associated with industrial activity, as defined at 40 CFR § 122.26(b)(14) (excluding §§ 122.26(b)(14)(iii) for mineral industry, 122.26(b)(14)(ix) for sewage treatment works and 122.26(b)(14)(x) for stormwater associated with construction activity), and other industrial stormwater discharges that may be required to obtain a permit under Pennsylvania's Clean Streams Law[2].

51.     Under the CWA and/or the General Permit, dischargers must employ Best Management Practices ("BMPs") that constitute BAT and BCT to reduce or eliminate stormwater pollution.  33 U.S.C. § 1311(b); General Permit, Part C, § II.  The EPA has developed benchmark levels ("Benchmarks") that are objective guidelines to evaluate whether a permittee's BMPs

---

[2] The General Permit contemplates a facility obtaining coverage regardless of a claim of no discharge. It addresses "Stormwater Monitoring Requirements," providing, in relevant part: "In the event that the permittee's stormwater runoff is directed to a basin or other stormwater control structure that does not discharge during a given monitoring period, the permittee may report "No Discharge" on DMRs." PAG-03 § V(A)(1).

PLAINTIFF'S COMPLAINT

achieve compliance with the BAT/BCT standards.  Final National Pollutant Discharge Elimination System (NPDES) General Permit for Stormwater Discharges from Industrial Activities ("Multi-Sector Permit"), 65 Fed. Reg. 64,746, 64,766-67 (Oct. 30, 2000); Multi Sector Permit, 73 Fed. Reg. 56,572, 56,574 (Sept. 29, 2008); Multi Sector Permit, 80 Fed. Reg. 34,403 (June 16, 2015).

52.    The Effluent Limitations of the General Permit prohibit the discharge of pollutants from the Facility in concentrations above the level commensurate with the application of BMP specified at General Permit, Part C § II, and in the sector specific appendices to the General Permit, which are consistent with the sector specific effluent limitations contained in the EPA MSGP. These benchmark values are reiterated and incorporated into the General Permit.  *See* General Permit, Appendices.

53.    The General Permit requires dischargers to develop and implement an adequate Preparedness, Prevention and Contingency Plan (a "PPC Plan").  *See* General Permit, Part C, § IV.  The General Permit also requires dischargers to review and if necessary, update the PPC Plan on an annual basis, at a minimum, and anytime a specific event triggers such a revision according to the General Permit.  *See* General Permit, Part C, § IV(B).

54.    The PPC Plan must include, among other requirements, the following: a description and assessment of all Accurate's potential pollutant sources; a description of the BMPs that will reduce or prevent pollutants in stormwater discharges; responsive actions required to be taken in the event of a spill or other pollution incidents; identify areas of the facility in which, due to topography or other factors, have a high potential for soil erosion, and identify measures to limit such erosion; address security measures to prevent accidental or intentional entry which could result in an unintentional discharge of pollutants; a plan for training employees and contractors on pollution prevention, BMPs, and emergency response measures; include a site map that shows structures, impervious surfaces, control measures, receiving waters, stormwater conveyances,

monitoring points, and non-stormwater discharge sites identify releases of "Water Priority Chemicals" within the previous three years; and, identify spill prevention control and countermeasure plans that may be used to meet the requirements of the General Permit. *See* General Permit, Part C, § IV(A).

57.    The General Permit requires facility operators to develop and implement a Stormwater Self-Monitoring, Reporting and Recordkeeping Program. *See* General Permit, Part A § III, Part C § V. The General Permit requires that facility operators create and implement a Stormwater Self-Monitoring, Reporting and Recordkeeping Program to ensure that each of a facility's stormwater discharges comply with the Discharge Prohibitions and Effluent Limitations specified in the General Permit. Facility operators must ensure that their Stormwater Self-Monitoring, Reporting and Recordkeeping Program practices reduce or prevent pollutants in stormwater and authorized non-stormwater discharges as well as evaluate and revise their practices to meet changing conditions at the facility. *Id.* This may include revising the PPC Plan as required by General Permit, Part C, § IV(B).

56.    The Stormwater Self-Monitoring, Reporting and Recordkeeping Program must measure the effectiveness of BMPs used to prevent or reduce pollutants in stormwater discharges, and facility operators must revise the Stormwater Self-Monitoring, Reporting and Recordkeeping Program whenever appropriate. *See* General Permit, Part A § III, Part C § V. The General Permit requires facility operators to monitor and collect samples of stormwater discharges from all outfall areas identified as such. *Id.* Facility operators are also required to provide an explanation of monitoring methods describing how a facility's monitoring program will satisfy these objectives. *Id.*

57.    Section 505(a)(1) and Section 505(f) of the Act provide for citizen enforcement actions against any "person," including individuals, corporations, or partnerships, for violations of

NPDES permit requirements.  33 U.S.C. §§1365(a)(1) and (f), § 1362(5).  An action for injunctive relief under the Act is authorized by 33 U.S.C. § 1365(a).  Violators of the Act are also subject to an assessment of civil penalties of up to $64,618.00 per day per violation for violations occurring after November 2, 2015.  33 U.S.C. § 1319(d), 40 C.F.R. §§ 19.1-19.4.

## STATEMENT OF FACTS

***Facility Description – Commercial and Industrial Recycling, Waste, and Scrap Metal Facility***

58.     Plaintiff, through its counsel, has conducted a detailed investigation of the Facility operated by the Defendants.

59.     This investigation reveals that the Facility operates as a "commercial and industrial recycling, waste, and scrap metal facility," which is included in the category of "scrap and waste recycling" defined in the General Permit as Facilities with Standard Industrial Classifications ("SIC") 5093, and is therefore regulated by the General Permit.

60.     Defendants advertise such commercial and industrial recycling, waste, scrap metal, and related services on its website, accuraterecycling.com, and highlight its expertise in the area, noting that, "Accurate is a name that has been in the waste and recycling industry for over 40 years with leadership spanning 4 generations. Accurate Recycling and Accurate Metals are located in Lansdowne, Pennsylvania and offer a vast service portfolio ranging from waste paper and plastics recycling, roll-off dumpster and compactor services, and metal scrap buyback."[3]

61.     Despite clear evidence that the Facility engages in "commercial and industrial recycling, waste, and scrap metal" industrial activity as per the definition in the General Permit, Defendants have not obtained coverage for stormwater discharge from the Facility under the General Permit, and therefore, stormwater discharges from the Facility have violated several terms

---

[3] *See* Defendants' website at https://www.accuraterecycling.com.

PLAINTIFF'S COMPLAINT

of the General Permit and the CWA.

*Activities Resulting in Polluted Stormwater Runoff*

62.     Operations at the Facility generally include, but are not limited to, commercial and industrial recycling, waste, and scrap metal. Repair and maintenance activities carried out at the facility include, but are not limited to, electrical, plumbing, roofing, asphalt, concrete, and utilities repairs as well as janitorial duties.  Other activities likely carried out in the regular course of business at the Facility include storage of fuel and other oils, maintenance, equipment storage, and waste storage.

63.     Certain operations at the Facility occur outdoors and are causing pollutants to be exposed to rainfall.

64.     Specifically, Plaintiff's investigation has documented industrial processes at the Facility exposed to stormwater, including, but not limited to:

a.  The storage of industrial machinery and products outdoors and not under cover, and exposed to stormwater, including:

i.   Dumpsters full of materials and left uncovered and exposed to rainfall;

ii.  Pallets piled on parts of the property and left uncovered and exposed to rainfall;

iii. Metal construction Vehicles;

iv.  Metal construction equipment; and

v.   Refuse.

b.  The carrying out of industrial processes outdoors and not under cover, including the use of the list of industrial machinery and products mentioned above.

65.     Vehicles and equipment at the Facility expose many other sources of pollution to the elements, including gasoline, diesel fuel, anti-freeze, battery fluids, and hydraulic fluids.

16
PLAINTIFF'S COMPLAINT

66.     The types of pollutants released by the Facility into the immediate environment are known to include, or have the potential to include, among other contaminants; Total Nitrogen, Total Phosphorous, Total Suspended Solids ("TSS"), Oil and Grease, Chemical Oxygen Demand, Total Aluminum, Total Copper, Total Lead and Total Zinc, and other pollutants.

67.     The industrial materials stored, and the pollutants generated at the Facility are exposed to stormwater flows.



68.     Activities at the Facility generate significant debris and particulate matter, which contain pollutants that settle on surfaces within the Facility.  During rain events, this pollution washes off those surfaces and flows via direct flow into the Lansdowne Borough MS4 sewer system, which ultimately empties into Cobbs Creek, Darby Creek and the Delaware River.  The polluted stormwater discharges from the Facility via direct flow into the Lansdowne Borough MS4 sewer system, which ultimately empties into Cobbs Creek, Darby Creek and the Delaware River

and the overall Delaware River Watershed, before eventually reaching the Delaware Bay and the Atlantic Ocean.

*Activities Contributing to CWA Violations*

69.    Defendants have, and continue to have, failed to obtain coverage for the Facility under the General Permit.

70.    Defendants have not developed and/or implemented an adequate PPC Plan at the Facility.

71.    Defendants have not developed and/or implemented BMPs that adequately minimize the exposure of pollutants to stormwater at the Facility.

72.    Defendants have not developed and/or implemented BMPs at the Facility that adequately control and minimize polluted runoff from the Facility.

73.    Defendants have not developed and/or implemented BMPs at the Facility that adequately treat and remove pollutants in stormwater prior to discharge.

74.    Defendants have not developed and/or implemented adequate measures to reduce or eliminate stormwater pollution that constitute BAT/BCT.

75.    Defendants have not developed and/or implemented adequate BMPs at the Facility to achieve stormwater discharges that meet EPA Benchmarks or applicable Water Quality Standards.

76.    Defendants have not adequately evaluated and revised the Facility's PPC Plan to address these failures.  Defendants have also failed to properly operate and maintain the structures and systems that have been put in place at the Facility to achieve compliance with the General Permit and its PPC Plan requirements.

77.    Defendants have not developed and/or implemented an adequate Stormwater Self-Monitoring, Reporting and Recordkeeping Program at the Facility which has resulted in practices

that do not adequately reduce or prevent pollutants from discharging from the stormwater flows from the Facility.

78.    Defendants' monitoring activities, or lack thereof, have not effectively identified compliance problems at the Facility or resulted in effective revisions of the PPC Plan.

79.    Due to Defendants' lack of effective pollution prevention measures, including effective BMPs, and its failure to implement an effective monitoring and reporting program, stormwater from the Facility becomes polluted with many constituents.  The potential pollutants from the Facility include among other contaminants; Total Nitrogen, Total Phosphorous, Total Suspended Solids ("TSS"), Oil and Grease, Chemical Oxygen Demand, Total Aluminum, Total Copper, Total Lead and Total Zinc, waste oils, lubricants, fuel, trash, debris, hazardous materials, and other pollutants.  Stormwater from the Facility discharges via direct flow into the Lansdowne Borough MS4 sewer system, which ultimately empties into Cobbs Creek, Darby Creek and the Delaware River, and the overall Delaware River Watershed, of which Cobbs Creek, Darby Creek, and the Delaware River are a part.

80.    Polluted stormwater is discharged from the Facility via direct flow into the Lansdowne Borough MS4 sewer system, which ultimately empties into Cobbs Creek, Darby Creek and the Delaware River, and the overall Delaware River Watershed, of which Cobbs Creek, Darby Creek, and the Delaware River are a part. Cobbs Creek, Darby Creek, and the Delaware River, their tributaries, and the overall Delaware River Watershed are waters of the United States.

81.    As the Defendants failed to obtain any coverage for the Facility since it was required to do so as of September 2020, the stormwater testing for the required pollutant parameters during the period since that date to the time Plaintiff served its Notice of Violations upon Defendants was non-existent and insufficient.  Specifically, as the Defendants have not obtained coverage under the General Permit, it has not submitted any Discharge Monitoring

Reports ("DMR") for any of the required reporting periods in the years 2020-2025.  As stated in the General Permit, facilities are required to provide DMRs semiannually.

82.    Significantly, the pollutants associated with SIC Code 5093 are particularly dangerous to riverine ecosystems, including: (i) Total Nitrogen; (ii) Total Phosphorous; (iii)Total Suspended Solids ("TSS"); (iv) Oil and Grease; (v) Chemical Oxygen Demand; (vi) Total Aluminum; (vii) Total Copper; (viii) Total Lead and (ix) Total Zinc.  Failures to adequately test stormwater runoff, as is the case here, make it difficult to determine both the amount of pollutants being discharged in a facility's stormwater, and the efficacy of any control measures put in place.

83.    In addition, due to Defendants' failure to obtain coverage under the General Permit, no PPC Plan containing adequate BMPs representing BATs and BCTs has been put in place at the Facility.  Such a failure can indicate only that no pollution control measures whatsoever are currently being implemented at the Facility.

84.    Due to the complete failure of the Defendants to even attempt compliance with the General Permit by obtaining coverage, it is likely that no pollution control measures are being implemented at the Facility at all.  The Facility's discharges of stormwater have therefore been, are, and are likely to continue to be regularly contaminated with higher levels of pollutants than are consistent with BMPs that constitute BAT/BCT.

**FIRST CAUSE OF ACTION**

**Failure to Obtain NPDES Permit Coverage for Stormwater Discharges**

85.    Plaintiff incorporates the allegations contained in all other paragraphs as though fully set forth herein.

86.    The CWA and CSL prohibit any person from placing or causing to be placed, any industrial wastes or other wastes, in a location where they cause pollution of any waters of the state

without a valid, unexpired permit. *See* 35 P.S. § 691.301; 35 P.S. § 691.611; 33 U.S.C. § 1311(a); *see also* 25 Pa. Code Chapters 92a, and 96.

87.    The CWA and CSL prohibit any person from discharging any pollutant or causing, permitting, or allowing a discharge of any pollutant from a point source without applying for and obtaining a general or individual NPDES permit. *See* 25 Pa. Code § 92a.1(b); 33 U.S.C. § 1342.

88.    Defendants' Facility is a "commercial and industrial recycling, waste, and scrap metal" facility operating under SIC Code 5093.

89.    Consequently, Defendants were required to, but did not, obtain NPDES permit coverage for the discharges from its Facility through the General Permit.

90.    Defendants have, and continue to have, failed to obtain proper coverage under the General Permit.

91.    Since at least September 2020, Defendants have been discharging polluted stormwater from the Facility without coverage under the General Permit, and therefore in violation of the Prohibitions of the General Permit during every significant rain event (rainfall event generating 0.1 inches or more of rain).  *See* Exhibit 1, Notice Letters at Attachment 3.

92.    The polluted stormwater discharged from the Facility during every significant rain event contains pollutants harmful to fish, plants, birds, and human health that have adversely affected, and continue to adversely affect, human health and the environment in violation of the General Permit.

93.    Discharges of polluted stormwater from the Facility have in the past caused, and will continue to cause, pollution, contamination, and/or nuisance to the waters of the United States in violation of the General Permit and the Water Quality Standards set forth in Section 93.6 of the Pennsylvania Code.

PLAINTIFF'S COMPLAINT

94.     Each day since at least September 2020, that Defendants have discharged polluted stormwater from the Facility in violation of the General Permit is a separate and distinct violation of CWA Section 301(a), 33 U.S.C. § 1311(a), as well as a separate and distinct violation of the CSL 35 P.S. § 691.301.

95.     By committing the acts and omissions alleged above, Defendants are subject to an assessment of civil penalties pursuant to CWA Sections 309(d) and 505, 33 U.S.C. §§ 1319(d) and 1365.

96.     An action for injunctive relief is authorized by CWA Section 505(a), 33 U.S.C. § 1365(a).  Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiff, for which harm it has no plain, speedy, or adequate remedy at law.

97.     An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

## SECOND CAUSE OF ACTION

### Discharges in Violation of Permit Prohibitions of the General Permit

98.     Plaintiff incorporates the allegations contained in all other paragraphs as though fully set forth herein.

99.     The CWA and CSL prohibit any person from placing or causing to be placed, any industrial wastes or other wastes, in a location where they cause pollution of any waters of the state without a valid, unexpired permit. *See* 35 P.S. § 691.301; 35 P.S. § 691.611; 33 U.S.C. § 1311(a); *see also* 25 Pa. Code Chapters 92a, and 96.

100.    The CWA and CSL prohibit any person from discharging any pollutant or causing, permitting, or allowing a discharge of any pollutant from a point source without applying for and obtaining a general or individual NPDES permit. *See* 25 Pa. Code § 92a.1(b); 33 U.S.C. § 1342.

101.    Defendants' Facility is a "commercial and industrial recycling, waste, and scrap metal" facility operating under SIC Code 5093.

102.    Defendants have, and continue to have, failed to obtain proper coverage under the General Permit.

103.    Since at least September 2020, Defendants have been discharging polluted stormwater from the Facility without coverage under the General Permit, and therefore in violation of the Prohibitions of the General Permit during every significant rain event (rainfall event generating 0.1 inches or more of rain).  *See* Exhibit 1, Notice Letters at Attachment 3.

104.    The polluted stormwater discharged from the Facility during every significant rain event contains pollutants harmful to fish, plants, birds, and human health that have adversely affected, and continue to adversely affect, human health and the environment in violation of the General Permit.

105.    Discharges of polluted stormwater from the Facility have in the past caused, and will continue to cause, pollution, contamination, and/or nuisance to the waters of the United States in violation of the General Permit and the Water Quality Standards set forth in Section 93.6 of the Pennsylvania Code.

106.    Each day since at least September 2020, Defendants have discharged polluted stormwater from the Facility in violation of the General Permit is a separate and distinct violation of CWA Section 301(a), 33 U.S.C. § 1311(a), as well as a separate and distinct violation of the CSL 35 P.S. § 691.301.

107.    By committing the acts and omissions alleged above, Defendants are subject to an assessment of civil penalties pursuant to CWA Sections 309(d) and 505, 33 U.S.C. §§ 1319(d) and 1365.

108.  An action for injunctive relief is authorized by CWA Section 505(a), 33 U.S.C. § 1365(a).  Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiff, for which harm it has no plain, speedy, or adequate remedy at law.

109.  An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

## THIRD CAUSE OF ACTION

### Discharge in Violation of Effluent Limitations of the General Permit

110.  Plaintiff incorporates the allegations contained in all other paragraphs as though fully set forth herein.

111.  The General Permit's PPC Plan requirements and effluent limitations require dischargers to reduce or prevent pollutants in their stormwater discharges through the implementation of measures that must achieve BAT for toxic and nonconventional pollutants and BCT for conventional pollutants.

112.  Defendants have failed to create and/or implement any PPC Plan whatsoever and has thus failed to create and/or implement any BMPs constituting BAT and BCTs at the Facility.

113.  Therefore, Defendants have discharged and continues to discharge stormwater from the Facility in concentrations above the level commensurate with the application of BMP specified at General Permit, Part C § II, and in the sector specific appendices to the General Permit, which are consistent with the sector specific effluent limitations contained in the EPA MSGP during every significant rain event occurring from September 2020, through the present.  Defendants' failure to develop and/or implement BMPs adequate to achieve the pollutant discharge reductions at the Facility is a violation of the General Permit and the CWA.  *See* General Permit, Part C, § IV; 33 U.S.C. § 1311(b).

114.   Each day since at least September 2020, that Defendants have discharged stormwater containing pollutants in violation of the General Permit, specifically *General Permit, Appendices*, is a separate and distinct violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), as well as a separate and distinct violation of the CSL 35 P.S. § 691.301.

115.   Defendants' CWA violations described in the paragraphs above will continue in the future until Defendants develop and implement BMPs at the Facility adequate to achieve pollutant discharge reductions attainable via BAT and BCT.

116.   By committing the acts and omissions alleged above, Defendants are subject to an assessment of civil penalties pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365.

117.   An action for injunctive relief is authorized by CWA Section 505(a), 33 U.S.C. § 1365(a).  Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiff for which harm it has no plain, speedy, or adequate remedy at law.

118.   An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

### FOURTH CAUSE OF ACTION

**Failure to Develop and Implement an Adequate Preparedness, Prevention, and Contingency Plan, In Violation of the General Permit**

119.   Plaintiff incorporates the allegations contained in all other paragraphs as though fully set forth herein.

120.   The General Permit requires dischargers to develop and implement an adequate PPC Plan.  *See* General Permit, Part C, § IV. The General Permit also requires dischargers to review and if necessary, update the PPC Plan on an annual basis, at a minimum, and anytime a

specific event triggers such a revision according to the General Permit. *See* General Permit, Part C, § IV(B).

121.    Defendants, as of September 2020, have commenced industrial activity and continue to conduct industrial activity at the Facility.

122.    Defendants have failed and continues to fail to develop and implement an adequate PPC Plan or implement all necessary revisions to the PPC Plan for the Facility as required by the General Permit.

123.    Defendants have failed and continues to fail to develop or implement a PPC Plan for the Facility that includes BMPs adequate to meet the requirements of the General Permit, specifically General Permit, Part C, § IV.

124.    Defendants have failed and continues to fail to adequately develop or implement a PPC Plan at the Facility that prevents discharges from violating the Discharge Prohibitions, and Effluent Limitations of the General Permit.

125.    Each day since September 2020, that Defendants have failed to adequately develop and/or implement a PPC Plan for the Facility in violation of the General Permit, is a separate and distinct violation of CWA Section 301(a), 33 U.S.C. § 1311(a), as well as a separate and distinct violation of the CSL 35 P.S. § 691.301.

126.    Defendants have been in violation of the General Permit's PPC Plan requirements every day since September 2020. Defendants will continue to be in violation of the PPC Plan requirements each day that Defendants fail to develop and fully implement an adequate PPC Plan for the Facility.

127.    By committing the acts and omissions alleged above, Defendants are subject to an assessment of civil penalties pursuant to CWA Sections 309(d) and 505, 33 U.S.C. §§ 1319(d) and 1365.

128.    An action for injunctive relief is authorized by CWA Section 505(a), 33 U.S.C. § 1365(a).  Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiff for which harm it has no plain, speedy, or adequate remedy at law.

129.    An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

**FIFTH CAUSE OF ACTION**

**Failure to Develop and Implement Adequate Stormwater Monitoring and Recordkeeping, In Violation of the General Permit**

130.    Plaintiff incorporates the allegations contained in all other paragraphs as though fully set forth herein.

131.    Defendants have discharged and continues to discharge pollutants from the Facility in violation of the General Permit.  Defendants are also in violation of the General Permit for repeated failure to report proper semiannual DMRs as required by the General Permit.  Thus, Defendants' discharges constitute an unpermitted discharge of pollutants from the Facility to waters of the United States in violation of CWA Section 301(a), 33 U.S.C. § 1311(a), as well as a separate and distinct violation of the CSL 35 P.S. § 691.301.

132.    Defendants have been in violation of CWA Section 301(a) every day it has discharged stormwater from the Facility to waters of the United States since September 2020. Defendants will continue to be in violation of the CWA each day that unpermitted stormwater discharges from the Facility to waters of the United States.

133.    By committing the acts and omissions alleged above, Defendants are subject to an assessment of civil penalties pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365.

134.    An action for injunctive relief is authorized by CWA Section 505(a), 33 U.S.C. § 1365(a).  Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiff for which harm it has no plain, speedy, or adequate remedy at law.

135.    An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

## RELIEF REQUESTED

Plaintiff respectfully requests this Court to grant the following relief:

A.    Declare Defendants to have violated and to be in violation of Sections 301(a) and (b) of the Clean Water Act, 33 U.S.C. §§ 1311(a) and (b), for discharging pollutants from the Facility in violation of a permit issued pursuant to Section 402(p) of the CWA, 33 U.S.C. § 1342(p), for failing to meet effluent limitations which include the Best Available Technology Economically Achievable and Best Conventional Pollutant Control Technology requirements, and for failing to comply with the substantive and procedural requirements of the General Permit;

B.    Enjoin Defendants from discharging pollutants from the Facility to stormwater discharge points, which discharge via direct flow into the Lansdowne Borough MS4 sewer system, which ultimately empties into Cobbs Creek, Darby Creek and the Delaware River, and the overall Delaware River Watershed;

C.    Order Defendants to restore all receiving waters damaged by Defendants' illegal discharges of pollutants from the Facility;

D.    Enjoin Defendants from violating Sections 301(a) and (b) and Section 402(p) of the Clean Water Act and from violating the substantive and procedural requirements of the General Permit at the Facility;

E.    Order Defendants to pay civil penalties of up to $64,618.00 per day per violation for violations occurring after November 2, 2015.  33 U.S.C. § 1319(d), 40 C.F.R. §§ 19.1-19.4;

F.      Award Plaintiff its costs (including reasonable attorney, witness, and consultant fees) as authorized by the CWA Section 505(d), 33 U.S.C. § 1365(d);

G.      Award such other relief as this Court may deem appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: May 27, 2026                    **BRODSKY SMITH**

By: *Marc L. Ackerman*
Evan J. Smith, Esquire (SBN 79032)
esmith@brodskysmith.com
Marc L. Ackerman, Esquire (SBN 56294)
mackerman@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 316350)
rcardona@brodskysmith.com
Two Bala Plaza, Ste. 805
Bala Cynwyd, PA 19004
Telephone:      (610) 667-6200
Facsimile:      (610) 667-9029

*Attorneys for Plaintiff*